THE INHABITANTS OF THE TOWNSHIP OF SADDLE RIVER, in the County of Bergen, *against* WILLIAM COLFAX.

#### ON CERTIORARI.

1. For a contract made by the overseers of the poor for the maintenance of a pauper, the inhabitants of the township are liable in their corporate capacity, and not the overseers.

2. Although the demand of the plaintiff, if interest be calculated at seven per cent. would exceed $100, yet if he demands no more interest, than, with the principal, amounts to $100, the justice may try the cause.

This case fully appears in the opinion delivered by his Honor Justice FORD.

*Dickerson*, att'y for plaintiff.    *Hornblower*, for defendant.

FORD, J.    At the annual corporate meeting of the inhabitants of the township, on the 11th of April, 1814, the overseers of the poor held their public auction for selling the maintenance of their poor, to the lowest bidders, for one year ; at which auction they struck off the maintenance of *Nelly and Betsey Carrol*, two infant paupers, of their town, to William Colfax, for one year, at $104.    William Colfax accordingly received, and maintained them for one year. Some time after making this contract, namely, on the 16th of May following, the *town committee*, doubting the obligation of the township to maintain these paupers, gave an order to the overseers to pay for their support *up to that date, and no longer*.    Accordingly, on the 19th of December, 1815, which was eight months after the expiration of the year, they paid him $10, and no more.    The residue lay unsettled until the year 1820, when he sued the inhabitants of the township, and declared there remained due to him, *for principal and interest*, the sum of $100.    The jury

found a verdict in his favor for $94. And now three errors
are assigned by the township : first, that the demand really
exceeded the jurisdiction of the court below ; second, that
the plaintiff was not entitled to pay for the *year's* support ;
and third, that the action in this case cannot lie against the
township.

1. The amount due to the plaintiff will certainly exceed
$100, if interest be calculated *at seven per cent.;* but the
law mentions this rate only to prohibit. men from taking
more. In *Pen.* 908, this court decided, that a creditor
might take *less* if he pleased, and this creditor says *he asks*
no more interest than, with the principal, amounts to $100.

2. The contract which bound the purchaser for *a year's*
maintenance, bound the other party, necessarily, for the
*same time.* It was a *mutual tie,* and could not be rescinded
without *mutual consent.* No idea is more unjust or danger-
ous, than that corporations, after they have *contracted,* may
rescind or alter the *contract at their pleasure.* It is a sacred
thing, and cannot be impaired, even in courts of law, after
it has been fairly and legally made.

3. I am of opinion, that this action lies against the
inhabitants of the township, and no other persons. The
act of 21st February, 1798, constitutes the inhabitants of
each township a *corporate body,* with powers to sue and be
sued, contract and be contracted with, and this is most
evidently a *corporation contract.*

*First.* Because no *other persons* are liable for the support
and maintenance of the poor, either at common law or by
statute. The common law made no provision for the poor,
but left them to depend on ecclesiastical charity, on offerings
*spontaneously* made at altars, and on the *voluntary* endow-
ment of almshouses by religious and pious people. The prin-
ciple of *forcing* one man to support *others,* not his *kindred,*
was wholly unknown to it. Nothing can be more remote
from all its precedents than the forcing of *two overseers,*
merely because they are public officers, to maintain *all the*

*poor of a township*, or be sued, as individuals, for the amount of the maintenance. Neither does the statute law of England with all its mightiest oppressions, contain such a doctrine. In 2 *Shaw's Jus.* 19, 20, it is laid down, " that overseers of the poor are not obliged to disburse *their own money* for the support of the poor, nor are they obliged to lay out money till they *have received it*," all which is fully supported in 2 *Ld. Ray.* 1009. And it is in vain we search the Jersey statutes for a law to subject overseers to an action for not advancing their own money. Many overseers are not worth so much in the world. Such a law would spread dismay through all the townships in the state, and could not exist a year in our code. Nor is there the least occasion for such a law, because,

*Secondly.* The support and maintenance of the poor is charged by law upon the *town corporate.* By the eleventh section of the act, they are expressly " *to raise money for the support and maintenance of the poor*," and if money is to be raised by judgment and execution against the overseers' private estates for the *same object*, it must be because the corporation *will not* do it, and then the overseers are *ruined ;* or if they *will*, then the money is to be raised *twice over.* And to give a remedy against the overseers in their private capacity is circuitous and altogether unnecessary, for,

*Thirdly.* A corporation is always bound by the *contracts of its officers*, provided they act within the line of their duty to the corporation, and by lawful authority. A corporation can act *no otherwise than by its officers ;* and hence, by the twelfth section of the act, the inhabitants are to elect officers to perform all their *corporate functions*, assessors to make the rates, collectors to levy them, overseers of the poor to place paupers out for maintenance, and a town committee to call all of them to account; and to suppose that these officers, acting *officially* and within the limits assigned them in law, do not *bind the corporation*, would be to produce the very essence of confusion ; the assessment would be no *cor-*

*porate rate ;* payment of rates to the collector would not be valid against the township ; the corporation might avoid all settlements made by the township committee, under pretence they were the doings of *private men,* and the overseers of the poor be left to judgment and execution upon contracts for support of the poor, though made by them *officially,* in their very names of *overseers of the poor ;* and this in opposition, not only to the whole scope and intent of the act of 1798, but,

*Fourthly.* In opposition to the *former decisions* of this court, and what I consider the firmly settled principles of the common law. I deem it useless to inquire into the liability of overseers *prior* to the incorporation of townships in 1798, for *at that time* the statute did away *old things,* and brought the overseers into a *new relation* by making them the *subordinate officers* of a corporation. Hence this court decided, in 1 *Pen.* 136, that if they pay out money *by mistake* they cannot recover it back in *their names,* because it is corporation money, and must be sued for in the name of the corporate body. And in 1 *Pen.* 6, this court rejected the idea that overseers were answerable as *principals,* declaring that they were, in fact, only the *agents of the township.* These decisions have been universally understood as settling the question against the private liability of overseers of the poor. They are to be considered as agents in what they do officially, and no principle of the common law is more firmly settled, than that the act of the *agent* is, in law, the *act of the principal.* " *Qui facit per alium facit per se,*" has been a maxim for ages. And it is as applicable to *public agents* as it is to private ones. In 1 *Term Rep.* 182, it was decided that where a man acts as *public* agent, and treats in that *capacity,* there is no pretence to say that he is *personally liable.* And the Supreme Court of the United States, in 1 *Cranch* 345, declares that this decision is consonant to policy, to reason, and to law, and repeats again, " that when a public agent acts in the line of his

duty, and by legal authority, his contracts are public, and *not private.*" Here the overseers were agents in no private business of their own ; they treated in the capacity of overseers, in the line of their duty, and by lawful authority. So it became the contract of the town, through the agency of their legitimate officers, and the action upon the contract is rightly brought against the inhabitants of the town. Therefore, in my opinion, the judgment should be affirmed.

ROSSELL, J. concurred.

KIRKPATRICK, C. J. I differ from my brethren in the opinion expressed in this case. My view of the question is shown in the case of *Board and Kanouse* v. *Cronk,*\* on *certiorari,* decided this term. I should, therefore incline to the opinion, that the judgment should be reversed.

Judgment affirmed.